**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Clean Harbors Services, Inc., | ) | |
| | ) | No. 12 C 7837 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| The Illinois International Port District, an | ) | |
| Illinois Municipal Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Clean Harbors Services, Inc. ("Clean Harbors") brings this action against Defendant The Illinois International Port District ("Port District") asserting claims under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607, 9613, the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972, and state law. Presently before the Court is the Port District's Motion to Dismiss Counts II and III of Clean Harbors' Amended Complaint. R. 13. For the reasons explained below, the Port District's motion is granted. Also as explained below, the Court dismisses Count II of the Port District's counterclaim against Clean Harbors.

**Legal Standard**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The following background is a summary of the relevant allegations in the Amended Complaint, viewed in the light most favorable to the plaintiff, Clean Harbors.

## Background

This case involves contaminated property located at 11700 and 11800 South Stony Island in Chicago, Illinois. The Port District has owned the property since 1955. In the 1970s, the Port District leased the property to a now-dissolved company, Hyon Waste Management Services, Inc. Hyon Waste operated a series of surface impoundments at the property for the treatment, storage, and disposal of hazardous wastes and disposed of tens of millions of gallons of waste.

Beginning in September 1980, the Port District leased the southern portion of the property to ChemClear, Inc., which was later acquired by Clean Harbors. Beginning in November 1990, the Port District leased the northern portion of the property to CMW Chemical Services, Inc., which was also later acquired by Clean

Harbors. (Throughout this Order, the Court refers to Clean Harbors and its predecessors collectively as "Clean Harbors.") Clean Harbors operated a waste processing facility at the property that processed hazardous wastes for disposal or recycling at offsite locations. Clean Harbors and the Port District are co-permittees on permits issued by the Illinois Environmental Protection Agency ("IEPA").

At some point in the past few years, IEPA directed the Port District and Clean Harbors to conduct a RCRA facility investigation of the property. The parties performed the investigation and discovered contamination primarily related to Hyon Waste's operations in the 1970s. The Port District and Clean Harbors subsequently worked with IEPA to develop a corrective action plan to address the contamination. IEPA gave its final approval for a corrective action plan in 2012, which is projected to cost $5 million to $5.7 million. To date, Clean Harbors has incurred more than $1 million in costs related to the investigation.

On September 30, 2012, after disagreements arose between Clean Harbors and the Port District, Clean Harbors filed the instant lawsuit. The original complaint contained five counts. Count I asserted a cost recovery claim under CERCLA § 107(a), 42 U.S.C. § 9607(a). Count II asserted a claim under the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/1 *et seq*. Count III sought a declaratory judgment concerning the parties' lease obligations. Count IV asserted an unjust enrichment claim. Count V asserted a quantum merit claim.

On October 2, 2012, Clean Harbors provided written notice to the Port District, IEPA, and the U.S. Environmental Protection Agency ("EPA") of its intent

to file a RCRA citizen suit against the Port District pursuant to 42 U.S.C. § 6972. The notice letter accused the Port District of violating the parties' IEPA permit by refusing to implement the corrective action plan, refusing to grant Clean Harbors access to the property, and refusing to execute other documents to allow for the closure of RCRA units at the property. R. 6, Am. Compl., Ex. R.[1] The notice letter did not allege that any condition at the property may present an imminent and substantial endangerment to health or the environment. *Id.*

On October 31, 2012, Clean Harbors filed an amended complaint adding two new counts against the Port District. The new Count II asserts a contribution claim under CERCLA § 113(f), 42 U.S.C. § 9613(f). The new Count III asserts a claim for "RCRA Relief" under 42 U.S.C. § 6972. The RCRA claim alleges not only that the Port District violated the parties' IEPA permit, Am. Compl. ¶¶ 135-44, but also that the Port District's actions at the property may present an imminent and substantial endangerment to health or the environment. *Id.* ¶¶ 132-33, 145.

On December 11, 2012, the Port District filed its motion to dismiss the new Counts II and III of the Amended Complaint, answered the remaining counts, and asserted a six-count counterclaim against Clean Harbors. Relevant here, Count II of the counterclaim alleges that Clean Harbors' actions may present an imminent and substantial endangerment to health or the environment under RCRA.

---

[1] On a motion to dismiss, courts "consider documents attached to the complaint as part of the complaint itself." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010).

**Analysis**

**I.      Port District's Motion To Dismiss**

**A.      CERCLA § 113(f) (Count II)**

CERCLA § 113(f)(1) provides that any person may seek contribution from other potentially liable parties "*during* or *following* any civil action under section 9606 of this title [CERCLA § 106] or under section 9607(a) of this title [CERCLA § 107(a)]." 42 U.S.C. § 9613(f)(1) (emphasis added).[2]

The Port District argues that Clean Harbors fails to state a contribution claim under § 113(f)(1) because Clean Harbors has not alleged that a civil action was filed against it under § 106 or § 107(a). As a result, the Port District argues, this action is not "during or following" a civil action as § 113(f)(1) requires.

In *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157, 160-61 (2004), the Supreme Court confirmed that a party who has not been sued under § 106 or § 107(a) may not invoke § 113(f)(1). Like Clean Harbors here, the plaintiff in *Cooper Industries* cleaned up contaminated property at the direction of a state agency, but "[n]either the [state agency] nor the EPA . . . took judicial or administrative measures to compel the cleanup." *Id.* at 164. The Supreme Court held that "Section 113(f)(1) . . . authorizes contribution claims only 'during or following' a civil action under § 106 or § 107(a), and it is undisputed that [the plaintiff] has never been

---

[2] Separately, CERCLA § 113(f)(3)(B) provides that "[a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not a party to a settlement." 42 U.S.C. § 9613(f)(3)(B). Although Count II cites § 113(f) generally, Clean Harbors does not contend that § 113(f)(3)(B) applies here.

5

subject to such an action. [The plaintiff] therefore has no § 113(f)(1) claim." *Id.* at 168. *See also United States v. Atlantic Research Corp.*, 551 U.S. 128, 133 (2007) ("In *Cooper Industries*, we held that a private party could seek contribution from other liable parties only after having been sued under § 106 or § 107(a).").

Clean Harbors concedes that it has not been sued under § 106 or § 107(a) and that existing precedent bars its § 113(f)(1) claim. Clean Harbors explains that it merely seeks to preserve an argument that costs incurred "at the direction of the regulating agency (the IEPA/USEPA), but not in the context of a formal, civil enforcement action," are recoverable under § 113(f)(1). R. 22 at 5.

This Court is obviously required to follow Supreme Court precedent, which has already rejected the exact argument that Clean Harbors apparently seeks to preserve. Like the plaintiff in *Cooper Industries*, although Clean Harbors incurred response costs at the direction of a state agency, it is undisputed that Clean Harbors has not been subject to a civil action under CERCLA § 106 or § 107(a). As a result, Clean Harbors fails to state a claim in Count II under § 113(f)(1).

## B.    RCRA Relief (Count III)

The Port District argues that Count III fails to state a claim for several different reasons. The Court does not need to go beyond the fact that Clean Harbors failed to comply with RCRA's pre-suit notice requirements.

RCRA authorizes two general types of citizen suits. First, a plaintiff may commence a civil action against "any person . . . who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order

which has become effective pursuant to this chapter." 42 U.S.C. § 6972(a)(1)(A). In order to proceed under subsection (a)(1)(A), a plaintiff is generally required to provide 60 days advance notice. *Id.* § 6972(b)(1)(A). ("No action may be commenced under subsection (a)(1)(A) . . . prior to 60 days after the plaintiff has given notice of the violation to (i) the [EPA] Administrator; (ii) the State in which the alleged violation occurs; [and] (iii) to any alleged violator of such permit, standard, regulation, condition, requirement, prohibition, or order.").

Second, a plaintiff may commence a civil action against "any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." *Id.* § 6972(a)(1)(B). In order to proceed under subsection (a)(1)(B), a plaintiff is generally required to provide 90 days advance notice. *Id.* § 6972(b)(2)(A) ("No action may be commenced under subsection (a)(1)(B) . . . prior to ninety days after the plaintiff has given notice of the endangerment to (i) the [EPA] Administrator; (ii) the State in which the alleged endangerment may occur; [and] (iii) any person alleged to have contributed or to be contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste.").

For both subsections (a)(1)(A) and (a)(1)(B), there is an exception where a plaintiff is not required to wait 60 or 90 days after providing notice. A civil action "may be brought immediately after such notification in the case of an action . . .

respecting a violation of [RCRA] subchapter III." *Id.* § 6972(b)(1)(A), (b)(2)(A). RCRA subchapter III governs hazardous waste management. *Id.* §§ 6921-6939.

Clean Harbors filed its Amended Complaint only 29 days after sending its RCRA notice letter. As a result, Count III was filed prematurely unless the subchapter III exception applies. Clean Harbors argues that "Subchapter III relates to all hazardous waste. This RCRA action relates to hazardous waste and, therefore is a Subchapter III action under RCRA." R. 22 at 8.

As an initial matter, even if the subchapter III exception applied here, it would not allow Clean Harbors to proceed on an imminent and substantial endangerment claim under subsection (a)(1)(B). Clean Harbors failed to provide *any* notice of such a claim. Clean Harbors' notice letter alleged only that the Port District violated the parties' IEPA permit; it did not allege that the Port District contributed or is contributing to a condition on the property which may present an imminent and substantial endangerment to health or the environment. The subchapter III exception does not relieve a party of its obligation to provide the required notice; instead, it simply provides that an action "may be brought *immediately after such notification.*" *Id.* § 6972(b)(2)(A) (emphasis added).[3] Because Clean Harbors failed to provide the pre-suit notice required by § 6972(b)(2)(A), it cannot proceed on its imminent and substantial endangerment claim.

---

[3] In its response, Clean Harbors concedes that the subsection III exception "provides that a citizen suit may be brought immediately *after notice,*" R. 22 at 8 (emphasis added), but then appears to suggest that it was not actually required to notify EPA and IEPA at all. *Id.* Clean Harbors does not cite any authority for this assertion, which is contrary to the plain language of the statute.

In any event, the subchapter III exception does not apply here because Clean Harbors cannot state a claim for a violation of RCRA subchapter III. Under 42 U.S.C. § 6926(b), a state may obtain authorization from EPA to administer and enforce its own hazardous waste program, which then operates in lieu of the federal RCRA program. Illinois is authorized to administer and enforce its own hazardous waste program. *See, e.g.,* 51 Fed. Reg. 3778 (Jan. 30, 1986). Indeed, Clean Harbors alleges that the permits at issue are IEPA permits.

As the court explained in *Evco Associates, Inc. v. C.J. Saporito Plating Co.*, No. 93 C 2038, 1994 WL 687552, at *4 (N.D. Ill. Dec. 7, 1994), "the consensus is that section 6972(a)(1)(A) subchapter III citizen suits are precluded in states with their own authorized hazardous waste program . . . because there are no effective federal hazardous waste requirements that can be violated." (Citing *Clorox Co. v. Chromium Corp.*, 158 F.R.D. 120, 123-24 (N.D. Ill. 1994), *Orange Env't, Inc. v. Cnty. of Orange*, 860 F. Supp. 1003, 1020 (S.D.N.Y. 1994), *City of Heath v. Ashland Oil Co.*, 834 F. Supp. 971, 979 (S.D. Ohio 1993), and *Thompson v. Thomas*, 680 F. Supp. 1, 3 (D. D.C. 1987).) Thus, the *Evco* court concluded that the plaintiff could not avoid the 60-day waiting period under the subsection III exception:

> Evco failed to provide proper notice and then wait the necessary period before seeking to amend its complaint to add a RCRA claim, as mandated by section 6972(b). The only way it can avoid the waiting period is if it properly alleged a subchapter III claim, and in this case such a claim is barred by the fact that Illinois law supersedes the federal hazardous waste regulations.

*Id.*

Although Clean Harbors asks the Court not to follow *Evco* simply because it was decided 18 years ago and has not been cited by other courts, R. 22 at 8, the Seventh Circuit reached a similar result a few years later in *AM International, Inc. v. Datacard Corp.*, 106 F.3d 1342 (7th Cir. 1997). In *AM International*, after explaining the subchapter III exception to RCRA's pre-suit notice requirements, *id.* at 1349-50, the Seventh Circuit expressly held that because the State of Ohio had received EPA authorization to promulgate its own hazardous waste program, "the federal [subchapter III] regulation [at issue] was ineffective in Ohio at the time of the amended complaint and cannot be the basis for injunctive relief" under 42 U.S.C. § 6972(a)(1)(A). *Am Int'l*, 106 F.3d at 1350.

Like the plaintiffs in *Evco* and *AM International*, Clean Harbors' RCRA claim cannot be based on a violation of RCRA subchapter III because EPA has authorized Illinois to administer and enforce its own hazardous waste program. As a result, the subchapter III exception does not apply. And because Clean Harbors did not otherwise comply with the RCRA pre-suit notice requirements, Clean Harbors fails to state a claim under both 42 U.S.C. § 6972(a)(1)(A) and (a)(1)(B).

## II. Port District's RCRA Counterclaim (Count II)

In Count II of its counterclaim, R. 16, the Port District asserts an imminent and substantial endangerment claim of its own under § 6972(a)(1)(B). In its response to the Port District's motion to dismiss, Clean Harbors notes that the Port District failed to provide notice before filing its counterclaim. R. 22 at 9. The Port District does not contest that it failed to notify Clean Harbors, IEPA, and EPA of its

intent to file a RCRA imminent and substantial endangerment claim. The Port District instead replies that Clean Harbors likely waived its ability to challenge the lack of notice because it answered the counterclaim and that, in any event, RCRA's pre-suit notice requirements do not apply to counterclaims. R. 23 at 6-7.

The Court has an independent obligation to ensure that the parties have complied with RCRA's pre-suit notice requirements. In *Hallstrom v. Tillamook County*, 493 U.S. 20, 31 (1989), the Supreme Court made clear that RCRA's pre-suit notice requirements "are mandatory conditions precedent to commencing suit under the RCRA citizen suit provision; a district court may not disregard these requirements at its discretion." Indeed, in *Hallstrom*, the Supreme Court held that where the plaintiff failed to comply with 42 U.S.C. § 6972(b), dismissal was required even after years of litigation and substantive rulings. *Id.* at 32.

Turning to the merits, the few courts that have addressed this issue are split on whether RCRA's pre-suit notice requirements apply to counterclaims. *Compare Premier Assoc., Inc. v. EXL Polymers, Inc.*, No. 08 CV 3490, 2010 WL 2838497, at *5-6 (N.D. Ga. July 19, 2010), *and City of Bangor v. Citizens Commc'ns Co.*, No. 02-183, 2006 WL 2516976, at *3-4 (D. Me. Aug. 28, 2006), *with Portsmouth Redevelopment & Housing Auth.*, 847 F. Supp. 380, 386 (E.D. Va. 1994).

Notably, the courts that have held that RCRA's pre-suit notice requirements do not apply to counterclaims did so largely because notice would have been superfluous. In *City of Bangor*, 2006 WL 2516976, at *3-4, the court explained that

> application of the notice and delay requirements to RCRA counterclaims in circumstances similar to those presented

11

serves no discernible purpose. Generally, requiring notice and delay before the commencement of a RCRA citizen suit serves two goals: (1) "notice allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits" and (2) "notice gives the alleged violator 'an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit.'" *Hallstrom*, 493 U.S. at 29 (citations omitted). Having already received notice from a plaintiff, additional notice to government agencies in connection with the filing of a RCRA counterclaim would simply be duplicative. With respect to the second goal, suffice it to say that notice to a plaintiff, who has already commenced a citizen suit, is unlikely to prompt that plaintiff to bring itself into complete compliance with RCRA and then decide to drop the citizen suit it has already commenced.

Similarly, in *Premier Associates*, 2010 WL 2838497, at *5-6, after the plaintiff gave proper notice and filed a RCRA citizen suit, the defendant asserted a counterclaim and argued that the plaintiff "had already provided 'notice' when it asserted RCRA claims" and that "it would be superfluous for [the defendant] to be required to provide its own notice." The court found *City of Bangor* persuasive and held that the defendant was not required to comply with the RCRA pre-suit notice requirements before asserting its RCRA counterclaims in this action. *Id.*

This Court agrees that as a general matter, 42 U.S.C. § 6972(b) would not require a counter-plaintiff to provide a superfluous notice. Thus, for example, if Clean Harbors had properly notified IEPA and EPA that conditions at the property may present an imminent and substantial endangerment to health or the environment, requiring the Port District to serve a similar notice before it could proceed on its counterclaim would serve no discernible purpose. IEPA and EPA

would already be on notice of the claim from Clean Harbors and could have intervened if they chose and obviated the need for a citizen suit.

The problem here is that the Port District's counterclaim is different from the claim asserted in Clean Harbors' notice to IEPA and EPA. As the Seventh Circuit explained in *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 486 (7th Cir. 2011), and as the Port District itself argues, R. 15 at 5, RCRA "provides for *two distinct types* of citizen suits—'violation' actions in subsection (a)(1)(A) and 'endangerment' actions in subsection (a)(1)(B)." (Emphasis added.) As discussed above, Clean Harbors' notice letter alleged only a "violation" action under (a)(1)(A); it did not allege an "endangerment" action under (a)(1)(B). As a result, the Port District, in its counterclaim, seeks to litigate an imminent and substantial endangerment citizen suit for which *no one* has provided notice to IEPA and EPA.

This problem is exacerbated by the fact that, as the Court already held, Clean Harbors failed to properly comply with RCRA's pre-suit notice requirements even for its "violation" claim under subsection (a)(1)(A). To say the least, it would be an odd result if one party's *insufficient* pre-suit RCRA notice somehow opened the door for other parties to assert their own RCRA citizen suit claims free of the notice requirements of 42 U.S.C. § 6972(b). Such a rule would subvert § 6972(b)'s purpose of ensuring adequate notice to EPA and the relevant State.

The Port District suggests that requiring a delay period for a compulsory counterclaim could raise issues under the Federal Rules of Civil Procedure. But Rule 13(e) expressly addresses "Counterclaim[s] Maturing or Acquired After

Pleading" and provides that "[t]he court may permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading." Fed. R. Civ. P. 13(e). Thus, a defendant wishing to inject a new RCRA citizen suit claim into a case as a counter-plaintiff can comply with both 42 U.S.C. § 6972(b) and Rule 13 by providing the required notice and then seeking leave to file a supplemental pleading after 60 or 90 days.

## Conclusion

Counts II and III in Clean Harbors' Amended Complaint and Count II in the Port District's Counterclaim are hereby dismissed. The parties may seek leave to file an amended complaint and/or counterclaim after they have sufficiently complied with RCRA's pre-suit notice requirements. In the meantime, the parties should proceed with discovery. The Court does not expect that the RCRA claim(s) will substantially alter the scope of discovery in this matter.

ENTERED:

_Thomas M Durkin_
_____
Honorable Thomas M. Durkin
United States District Judge

Dated:  February 25, 2013