**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CLEAN HARBORS SERVICES, INC., a Massachusetts corporation, ) ) ) | |
| Plaintiff/Counterdefendant, ) ) | |
| v. ) ) | No. 12 CV 7837 |
| THE ILLINOIS INTERNATIONAL PORT DISTRICT, an Illinois Municipal Corporation, ) ) ) ) | |
| Defendant/Counterclaimant. ) | |

**ILLINOIS INTERNATIONAL PORT DISTRICT'S
REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
COUNTS II, III AND VIII OF SECOND AMENDED COMPLAINT**

Clean Harbors has not adequately addressed the three major points supporting the Port District's Motion to Dismiss, and therefore this Court should grant the motion: (a) Clean Harbors has not alleged any affirmative action by the Port District with respect to hazardous or solid waste, a requirement under RCRA's Endangerment Provision. As such, this Court should dismiss Count II; (b) Clean Harbors has not alleged any RCRA violations, a requirement under RCRA's Violation Provision, and, for this reason, this Court should dismiss Count III; and (c) Clean Harbors' unjust enrichment claim relies on the lease between the parties. Since the claim is based on an express contract, the unjust enrichment claim is precluded, and this Court should dismiss Count VIII.

### A. Clean Harbors Has Not Alleged Any Active Involvement by the Port District

Citing the Seventh Circuit's opinion *Sycamore Industrial Park Associates v. Ericsson, Inc.,* 546 F.3d 847 (7th Cir. 2008), Clean Harbors admits that the term "contribute" under the RCRA Endangerment Provision requires "active involvement" in the handling, storage,

treatment, transportation or disposal of hazardous waste" and that "[p]assive conduct is not sufficient." ECF #58 at 3 (hereafter referred to as "Response"). *See also* Port District's opening brief (ECF #52) ("Opening Brief"), citing *Sycamore* to also require "affirmative action." Yet, as shown below, none of the ten factual allegations that Clean Harbors cites in its Response (at 3-4) involve active involvement or affirmative action.

Clean Harbors first asserts that the Port District "owned and/or operated at the Property during the relevant time period." *Id*. at 3, parenthetical (1). Courts are clear that "[m]ere ownership of real property is insufficient to qualify as having 'contributed to, or is contributing to' unlawful waste-handling activities for liability." *Town & County Coop, Inc. v. Akron Products Co.*, 2012 U.S. Dist. LEXIS 66128 *8 (N.D. Ohio May 11, 2012), citing, among other cases, *Sycamore*. Clean Harbors has not alleged that the Port District operated at the site. Even assuming that the Port District's alleged construction of the piers may constitute operation at the Property, as the Port District showed in its Opening Brief (at 6-7), and Clean Harbors does not refute, the materials used to construct the piers do not involve solid or hazardous waste. As such, the Port District's construction of the piers is not actionable under RCRA's Endangerment Provision.

Clean Harbors then asserts that the Port District was and is a co-permittee under the RCRA permit with Clean Harbors. Response at 3, parenthetical (2). As the Port District explained in its Opening Brief (at 6), the Port District's mere alleged status as co-permittee with no allegations that, as co-permittee, the Port District was involved with any operations, let alone handled, stored, treated, transported or disposed of hazardous waste, does not establish active involvement.

Clean Harbors next claims that the Port District "authorized" Hyon Wastes' hazardous waste activities and contamination of the Property, that it "was aware" of City of Chicago's enforcement action at the Property and that the Port District "never directed" Hyon Waste to abate the contamination nor attempted to hold Hyon Waste responsible. Clean Harbors' Response, parentheticals (3-7). Even, for purposes of this motion, assuming these allegations are true, none of them constitute active involvement or affirmative action with respect to the waste. The mere fact that the Port District allegedly authorized a third party (Hyon Waste) to take action on the Property does not make the Port District itself an affirmative actor. Similarly, the Port District's mere awareness of actions by a third party does not, under any reasonable definition, constitute active involvement. Finally, the Port District's alleged failure to issue a directive, or hold Hyon Waste accountable, is the "passive conduct" that the Seventh Circuit (and Clean Harbors) specifically found is not sufficient for a RCRA endangerment claim. *See also* Opening Brief at 5-6, describing cases cited with approval by the Seventh Circuit in *Sycamore*, dismissing RCRA Endangerment Claims against defendants who allegedly displayed "studied indifference" to contamination, did not contain waste, and delayed taking action with respect to contamination generated by others.

Clean Harbors' three other factual assertions in its Response (at 4) also fail to establish the Port District's active involvement with hazardous waste. Clean Harbors asserts that it performed a joint comprehensive environmental investigation of the contamination with the Port District and proposed a remedy, which Illinois EPA has conditionally approved. To merely study a site and propose a remedy pursuant to a RCRA permit could not possibly be construed to be contributing to an endangerment. It would be against public policy for Congress to hold a party liable for merely studying contamination and proposing a remedy pursuant to RCRA

permit requirements. Clean Harbors' claim that the Port District "abruptly disavowed" the proposed remedy is also not actionable. Mere disagreement (or even changing positions) with respect to a conditional remedy in connection with an administrative proceeding before the Illinois EPA is not active involvement or affirmative action with respect to the hazardous wastes. Once again, it is unreasonable to believe that Congress would intend to penalize a party for presenting its views to an administrative agency. Finally, Clean Harbors' alleges that the Port District "is demanding" that Clean Harbors remove the improvements that make up an engineered barrier for the wastes. The Port District's mere demand to a third party to take action does not, under any definition, constitute affirmative action relating to wastes, particularly, as here, when there are no allegations that the third party (Clean Harbors) has taken such action.[1]

Contrary to Clean Harbors' assertion, as the Seventh Circuit explicitly found in *Sycamore*, citizens may file RCRA Endangerment suits only against those persons who actively handled or stored hazardous waste. Opening Brief at 5. *See also Albany Bank and Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 972 (7th Cir. 2002) (RCRA Endangerment claim requires allegations "that the defendant has generated hazardous waste."). Indeed, the very cases cited with approval by the Seventh Circuit in *Sycamore* (and discussed in the Opening Brief at 5) make it clear that the Seventh Circuit interprets the "contributed" provision to apply only to those directly involved with waste.

Clean Harbors ignores all but one of the cases that the Seventh Circuit cites in *Sycamore*, *ARB Industrial Systems, Inc. v. Prime Tech, Inc.*, 120 F.3d 351, 359 (2d Cir. 1997). In *ARB,* the Second Circuit affirmed the dismissal of a RCRA Endangerment suit on grounds that plaintiff

---

[1] Clean Harbors' recitation (Response at 5) to the RCRA definitions of "disposal" and "storage" only hurts its position. "'Disposal' requires an affirmative act…" *G.J. Leasing Co. v. Union Electric Co.*, 854 F.Supp. 539, 559 (S.D. Ill. 1993). Similarly, storage "means containment." 42 U.S.C. § 6903(33). There are no allegations that the Port District engaged in an affirmative act of disposal or contained any waste.

could not show that the defendants "spilled hazardous chemicals or otherwise contaminated the site." *Id*. In its Response (at 8), Clean Harbors tries to distinguish ARB on grounds that it was decided on a motion for summary judgment and that the Port District owned the Property at all relevant times. This is a distinction that makes no difference. Clean Harbors has not even alleged that the Port District spilled hazardous chemicals or otherwise contaminated the site, so there are no such facts for this Court to consider. The Port District's ownership of the Property is also immaterial to the *ARB* decision, which clearly authorizes RCRA Endangerment claims against only those who spill hazardous chemicals.

Clean Harbors voices concern in its Response (at 5) that "willful blindness to hazardous waste contamination is a defense to RCRA claims against property owners." The argument misconstrues both the Port District's position and RCRA's statutory language. As the Ninth Circuit recently wrote, RCRA's Endangerment Provision plainly applies only to those, whether property owners or not, with an active and direct connection to the waste itself:

> The statutory prohibition on "contributing to" speaks in active terms about "handling, storage, treatment, transportation, or disposal" of hazardous waste. *See* [42 U.S.C. § 6972(a)(1)(B)]. Handling the waste, storing it, treating it, transporting it, and disposing of it are all active functions <u>with a direct connection to the waste itself</u>. From the language Congress chose, it seems plain that Congress was concerned with those who handle, store, treat, transport, or dispose of the waste.

*Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 851 (9th Cir. 2011) (emphasis added). When, as here, the Port District as property owner, has not handled, stored, treated, transported or disposed of waste, it is not liable under RCRA's Endangerment Provision.[2]

---

[2] If Congress meant to hold all property owners responsible, or even those who exhibit "willful blindness," under RCRA's Endangerment Provision it would have done so. Indeed, under another major environmental statute, the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9607(a)(1), Congress holds liable a person merely as "the owner…of a facility." By contrast, RCRA's Endangerment Provision holds a person liable only if it has contributed or is contributing to an endangerment.

Clean Harbors cites a lone district court case, *Carlson v. Ameren Corp.,* 2011 WL 223015 (C.D. Ill. Jan. 21, 2011) (Response at 6) to support its position. As an initial matter, *Carlson*, in which a district court held a landowner responsible under RCRA's Endangerment Provision for blocking access for remediation, was incorrectly decided. In *Carlson* there were no allegations that the landowner was ever actively involved with, or took affirmative action relating to, the waste, as required by the Seventh Circuit in *Sycamore*. The landowner in *Carlson* did not "spill hazardous chemicals or otherwise contaminate the site," as required under *ARB Industrial Systems, Inc. v Prime Tech, Inc.*, 120 F.3d 351, 359 (2d Cir. 1997) (cited by the Seventh Circuit), nor did it "handle, store, treat, transport or dispose of waste," as required under *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 851 (9th Cir. 2011). Moreover, by holding an owner responsible under RCRA for merely blocking access, the district court in *Carlson* contradicted another Seventh Circuit RCRA ruling, *Albany Bank and Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 972 (7th Cir. 2002). In *Albany*, the Seventh Circuit acknowledged a property owner's right to refuse access to its property. It allowed a landowner to go forward with a RCRA Endangerment claim, despite blocking access to the defendant to remediate the site. It is illogical to think that the Seventh Circuit would recognize an owner's right to deny access under RCRA in *Albany Park*, but at the same time, as the district court did in *Carlson*, deem such denial as "contributing" to contamination, thus making the owner itself liable under RCRA's Endangerment Provision.

In any event, as discussed in the Opening Brief (at 7, n.1), and not addressed by Clean Harbors in its Response, *Carlson* is inapplicable on its facts. Unlike here, in *Carlson,* the owner entirely blocked a party from remediating the property. By entirely blocking access, the district court concluded (wrongly, we submit) that the owner was actively involved in storing the waste. Here, Clean Harbors has not alleged that the Port District has taken any action to block it from

6

the Property. Clean Harbors alleges only that the Port District has "attempted to disavow" the proposed remedy and "demanded" removal of engineered barriers. Second Amended Complaint, ¶ 117; Clean Harbors' Response at 4. Mere disavowal in a letter to a public agency or making a demand is far different from blocking access for remediation.

### B. Clean Harbors Fails to Plead a Valid RCRA Violation Claim in Count III

Clean Harbors has still not identified any actual violations, as required by the cases cited by the Port District in the Opening Brief (at 9-10). In fact, nowhere in the Second Amended Complaint does Clean Harbors allege that any "permit, standard, regulation, condition, requirement, prohibition or order which has become effective pursuant to [RCRA]" has actually been violated, as required to state a RCRA Violation Claim under 42 U.S.C. § 6972(a)(1)(A).

In its Response (at 12-13), Clean Harbors reiterates a series of complaints (*i.e.*, refusing to cooperate with the conditional plan, attempting to impermissibly limit its obligations, demanding removal of improvements and not signing a form), each of which the Port District (Opening Brief at 10-11) explained are not RCRA violations. Clean Harbors still fails to explain why these complaints constitute RCRA violations (which they do not). Clean Harbors then quotes its Notice Letter, which cites the RCRA permit, including RCRA Corrective Action Requirements, but again, does not explain why (or even assert) that the RCRA permit has been violated (which it has not).[3] As explained in the Opening Brief, Clean Harbors' claim in Count III is merely a series of complaints against the Port District for at most, threatened or actual violations of a private lease, which does not state a valid RCRA Violation Claim.

---

[3] As a permittee, to the extent that there are any violations of the RCRA permit, Clean Harbors would be liable. The fact is that there are no RCRA violations at the Property, which precludes a RCRA Violation claim.

### C.     <u>Clean Harbors Fails to Plead a Valid Unjust Enrichment Claim in Count VIII</u>

Clean Harbors' attempt to distance itself from the terms of an express contract (the lease), upon which it makes its unjust enrichment claim, is also unavailing. As explained in the Opening Brief, the Demand Letter (ECF #49, Ex. S) that forms the basis of the unjust enrichment claim in Count VIII (ECF #49, ¶ 189): (a) cites "the Amendment and Assignment of CWM Chemical Services, Inc. Lease to Clean Harbors," (b) states that Clean Harbors made the overpayment upon which Count VIII is based, "pursuant to the Amendment and Assignment of CWM Chemical Services, Inc. Lease to Clean Harbors," and (c) admits that it delivered the Demand Letter "[p]ursuant to the Notice Provision of the 1990 Lease." Additionally the Demand Letter cites a "May 31, 1995 Letter Agreement" for the proposition that the "payments set forth in Paragraph 2 of the Amendment to the 1990 Lease…were to expire by 2009." By Clean Harbors' own admission, it is making its unjust enrichment claim under the terms of express agreements.

In its Response (at 15), Clean Harbors states that no express contract governed the payments that Clean Harbors was making "because the [May 31, 1995] Letter Agreement expired." This is simply incorrect. Not only does Clean Harbors state in its Demand Letter that amounts were billed "pursuant to the Amendment and Assignment of CWM Chemical Services, Inc. Lease to Clean Harbors," but Clean Harbors admits in its Second Amended Complaint (ECF # 49, ¶ 53) that it "provided timely written notice of termination of the North Lease effective December 31, 2012."[4] As such, a written lease indeed governed the parties' relationship until December 31, 2012. Clean Harbors was a holdover tenant, and, as a matter of Illinois law, was subject to "the same provisions contained in the original lease." *Public Building Commission v.*

---

[4] In its Second Amended Complaint (ECF #49, ¶ 51, Ex. G), Clean Harbors defines the "North Lease" as the same November 1990 Lease that it references in its Demand Letter.

*Yellen*, 2013 Ill App (1st) 112638, 986 N.E.2d 706, 718 (1st Dist. 2013). If anything, the May 31, 1995 Letter Agreement amended the express contact between the parties that, as Clean Harbors admits, terminated on December 31, 2012. Clean Harbors' unjust enrichment claim is thus barred, as it relies on an express contract.

## CONCLUSION

For the reasons stated in the Port District's Initial Memorandum and this Reply, this Court should dismiss Counts II, III and VIII of Clean Harbors' Second Amended Complaint.

Respectfully submitted,

ILLINOIS INTERNATIONAL PORT DISTRICT

By:  /s/ James D. Brusslan
       One of Its Attorneys

James D. Brusslan
Levenfeld Pearlstein, LLC
2 N. LaSalle St., Suite 1300
Chicago, IL  60602
Telephone:  (312) 476-7570
Fax:  (312) 346-8434
E-mail:  jbrusslan@lplegal.com

NEAL & LEROY, LLC
Michael D. Leroy
Paul M. Rickelman
203 North LaSalle Street, Suite 2300
Chicago, IL  60601
Telephone:  (312) 641-7144
Fax:  (312) 641-5167
E-mail: mleroy@nealandleroy.com
E-mail: prickelman@nealandleroy.com

Christopher J. Werner
Werner Business Law
53 West Jackson Blvd.
Suite 1627
Chicago, Illinois 60604
Telephone:  (312)339-4984
cwerner@wernerbusinesslaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 18, 2013, all individuals of record who are deemed to have consented to electronic service are being served true and correct copy of the foregoing documents, and all attachments and related documents, using the Court's ECF system.

/s/    James D. Brusslan